# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: DARRON DALTON AND CHARISE R. DALTON** | **CASE NO. 07-50402 ERG** |
| | **CHAPTER 13** |

## OPINION

The matter before the court is the Objection to Confirmation (Dkt. # 14) filed by the Chapter 13 Trustee, Warren A. Cuntz, Jr., as well as the Debtor's Response thereto (Dkt. #17), and the trustee's reply (Dkt. #18). Having considered the pleadings and memoranda submitted by counsel for the parties, the court concludes that the Objection to Confirmation should be overruled.

## I. FACTUAL BACKGROUND

Darron Dalton and Charise R. Dalton ("Debtors") filed a petition for relief under Chapter 13 of Title 11 of the United States Code on March 29, 2007. An objection to confirmation was filed by the Chapter 13 Trustee, Warren A. Cuntz, Jr. The objection indicated that the Debtors' Form 22C calculations show their income to be above the applicable median family income. The trustee objected on the basis that the Bankruptcy Code requires that the applicable commitment period not be less than 5 years unless that Debtors' plan provides for full payment of all allowed unsecured claims over a shorter period of time. The Debtors' Chapter 13 plan proposed a 56 month commitment period resulting in a 5% distribution to holders of allowed unsecured claims totaling $34,545.60. The trustee requested that confirmation be denied.

In their response to the trustee's objection, the Debtors admitted the plan should be

extended to 60 months and indicated their willingness to extend the length of the plan. However, the Debtors indicated an unwillingness to increase the dividend to unsecured creditors and, instead, proposed a reduction in the plan payment, thereby keeping the estimated pay over the length of the plan unchanged.[1]

The trustee denies that the extension of the commitment period should enable the debtors to reduce their plan payment. The trustee also points out his objection did not request that the percent dividend to general unsecured creditors be increased, but only that the plan commitment period be extended to five years. The parties submitted briefs on the issue.[2]

## II. CONCLUSIONS OF LAW

The matter before the court is a core proceeding pursuant to 28 U.S.C. § 157. The court has jurisdiction over the subject mater of this proceeding and over the parties pursuant to 28

---

[1] Based on the Debtors' computations, reference to Schedules I and J resulted in monthly net income of $977.00, and the Debtors' plan proposed a monthly payment of $977. However, the Debtors indicate that calculations and statutory expenses permitted on Form 22C reflect a negative disposable income for the Debtors.

[2] The parties submitted an agreed order refining the issue and implementing a briefing schedule. The order provided that the parties were to confine their briefs to the issue of "Whether extension of Debtors' Chapter 13 plan term provides a sufficient basis to allow Debtors to reduce their plan payment in order to keep the estimated pay in unchanged?" The briefs submitted by the parties contain arguments as to whether the parties confined their briefs to the stated topic. The Debtors' brief turns the focus to an issue of how to project disposable income for the Chapter 13 plan. The court reaches its decision without finding it necessary to address whether the issues presented were confined to that required by the agreed order. The court indicates, however, that it does not consider the extension of the Debtors' Chapter 13 plan term, in itself, a justifiable basis upon which to allow a reduction in the plan payment. Rather, the issue of whether the plan payment may be reduced may require consideration of disposable income projections. The Debtors argue that based upon applicable disposable income projections, unsecured creditors are not entitled to a distribution, and that the Debtors should be allowed to reduce the plan payment accordingly.

U.S.C. § 1334 and §157.

The trustee's initial objection as to the applicable commitment period for the proposed Chapter 13 plan is not in dispute because the Debtors have agreed to extend the length of the plan to 60 months. The issue remaining for the court is whether the debtor may amend the payment amount to reduce the distribution to general unsecured creditors. The court concludes that this issues turns, not on the length of the plan, but rather, on a determination of the appropriate calculation for projecting the Debtors' disposable income. As set out in the Debtor's rebuttal brief:

> The controversy before the Court hinges on the interpretation of how Debtors must project 'disposable income' pursuant to 11 U.S.C. § 1325. If this Court finds that Form 22C is the standard for projecting 'disposable income', Debtors may pay zero to unsecured creditors or as the Trustee would say, "reduce the 'estimated pay in'". However, if this Court finds that Schedules I and J are the standard for projecting 'disposable income', Debtors 'estimated pay in' would remain the same and Debtors could not reduce their plan payment.

Debtors' Rebuttal Brief at 1. As the parties indicate, decisions on this issue have been divided.

In *In re Stubbs,* 2007 WL 42287579 (Bankr. D. Mont., Dec. 6, 2007), the court stated the following:

> BAPCPA substantially modified the disposable income test of § 1325(b) . . .
>
> The term disposable income" is defined at § 1325(b)(2) and is determined differently depending on whether the debtor's income is above or below the applicable median family income as determined by the debtor's place of residence and household size. If a debtor's annualized current monthly income, as set forth on Line 21 of Form 22C, is greater than the applicable state's median income for a household of the same size, reasonably necessary expenses are calculated using the "Means Test" of § 707(b)(2)(A) and (B). However, if a debtor's annualized current monthly income is less than the state's applicable median income, the debtor is finished with Form 22C and proceeds to list income and expenses on Schedules I and J.

*Id.* at 2. In a prior decision, the same court commented as follows:

> As previously mentioned, § 1325(b)(3) imposes what a leading commentator describes as "[p]erhaps the most dramatic changes in the disposable income test" by application of the § 707(b) means test expense calculations . . .
>
> The Trustee and Debtors agree that Debtors are above-median income debtors. COLLIER explains:
> New section 1325(b)(3) provides that for debtors with current monthly income above the applicable state median income for their household size, reasonably necessary expenses are to be calculated using the means test formula in section 707(b)(2)(A) and (B) in order to determine payments to unsecured creditors. Colliers, ¶ 1325.08[5][c][I].
> In re Barr, 341 B.R. 181, 185 (Bankr.M.D.N.C.2006), explains: "The use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." The court found the language of § 1325(b)(3) unambiguous and enforced it according to its terms requiring that the expenses of above-median income debtors be determined under § 707(b)(2)(A) and (B). *Id.,* citing *Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("When the language of a statute is plain, the sole function of the courts is to enforce the statute according to its terms unless the disposition required by the text is absurd"); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6,120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). In an earlier reported decision, this Court concurred with *Barr* and *Hardacre* and held that the expenses of above-median debtors' must be determined in accordance with the mechanical "means test" set forth in § 707(b). *In re Tranmer,* 355 B.R. 234 (Bankr.D.Mont.2006).
> The Trustee and Debtors agree that Debtors' income is above Montana's median income for a family of five. Thus, Debtors' disposable income is, by statute, determined by Form 22C and not Debtors' Schedules I and J.

*In re Crabtree,* 2007 WL 3024030, 3-4 (Bankr. D. Mont.2007).

The court in *In re James,* 2007 WL 4303215 (Bankr. D. Neb., Nov. 30, 2007), made the following statements regarding disposable income projections, although a case dealing with good faith:

> In In re Mitchell, 368 B.R. 845 (Bankr.D.Neb.2007), this Court was faced with a similar issue where the debtor's income available by comparing Schedules I and J exceeded the projected disposable income resulting from application of Form 22C. In that opinion, this Court found that by using the word "shall" in 11 U.S .C

> § 1325(b)(3), it appeared that Congress mandated the use of the calculations set forth in the Form 22C test to determine the debtor's "reasonably necessary" expenses. . .
>
> Subsequently, the Eighth Circuit Bankruptcy Appellate Panel decided the case of *Coop v. Frederickson (In re Frederickson),* 375 B.R. 829 (B.A.P. 8th Cir.2007). In that opinion, the B.A.P. wrote:
>
> Post-BAPCPA, 11 U.S.C. § 1325(b) is a new creature. While it contains language held over from the old statute, Congress has given it new parameters, with the intention of producing results dramatically different from pre-BAPCPA outcomes. "Projected disposable income" is the disposable income calculated on Form 22C extrapolated over the applicable commitment period. It is the amount to be paid on unsecured claims. The statute requires no more. If the disposable income is negative, there is no applicable commitment period and a debtor is not required to propose a plan that calculates payments to unsecured creditors in the same manner as plan payments to all creditors were calculated pre-BAPCPA.
>
> Despite the *Mitchell* ruling by this Court and the *Frederickson* ruling by the B.A.P., the Chapter 13 Trustee urges that the "good faith" test of § 1325(a)(3) can be used to defeat confirmation of a plan where the debtor has the actual ability to pay more than the amount calculated by Form 22C. The Chapter 13 Trustee asserts that it does not appear the good faith argument was raised in either *Mitchell* or *Frederickson.*

*In re James,* 2007 WL 4303215 (Bankr. D. Neb. 2007). The court further held that, "A debtor does not fail the good faith test simply because of the ability to pay more than the means test result." *Id.* at 5.

The court in *In re Nance,* 371 B.R. 358 (Bankr. S.D.Ill. 2007), discussed the splits of authority that have developed on how to calculate projected disposable income:

> The issue before the Court is how to calculate a debtor's "projected disposable income" under BAPCPA. While "disposable income" is defined in 1325(b)(2), the definition of "projected disposable income" is conspicuously absent. Specifically, the Court must determine whether a debtor's "projected disposable income" is calculated using the current monthly income figure on line 20 of Official Form B22C, which looks back at the six months preceding the filing, or whether the Court should give forward meaning to the word "projected" and use a debtor's income as reflected on Schedule I to calculate "projected disposable income."
>
> This interpretive conflict has created a significant split of authority among the nation's bankruptcy courts. Three distinct methods of interpretation have emerged.

-5-

In *In re Fuller,* Judge Pamela Pepper, while sitting by designation in this district, held that "projected disposable income" must be calculated by using the debtor's actual income at the moment of filing as captured on debtor's Schedule I. *In re Fuller,* 346 B.R. 472, 485 (Bankr.S.D.Ill.2006). In doing so, Judge Pepper agreed with the Northern District of Texas Bankruptcy Court's rationale and holding in *In re Hardacre. Id.* at 478, 482; *see In re Hardacre,* 338 B.R. 718 (Bankr.N.D.Tex.2006).

. . .

While *Fuller* and *Hardacre* completely ignore a debtor's "current monthly income" (as defined in § 101(10A) and referenced on line 20 of Form B22C) in favor of the income amount listed on Schedule I, the United States Bankruptcy Court for the Central District of Utah in *In re Jass* took a more presumptive approach. *See In re Jass,* 340 B.R. 411 (Bankr.D.Utah 2006). The *Jass* court, in an effort to both give meaning to the word "projected" and to avoid what it called "absurd" results, held that "[t]he Court will presume that the number resulting from Form B22C is the debtor's 'projected disposable income' unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *Id.* at 418.

. . .

Finally, several other courts have chosen a stricter, more mechanical approach than that adopted by either the *Fuller* or *Jass* courts. The United States Bankruptcy Court for the Eastern District of North Carolina in *In re Alexander* found that § 1325(b)'s plain meaning required a simple, mathematical calculation using Form B22C to determine "projected disposable income." *In re Alexander,* 344 B.R. 742, 749 (Bankr.E.D.N.C.2006). *See also In re Berger,* 2007 WL 1704403 (Bankr.M.D.Ga. June 11, 2007); *In re Kolb,* 366 B.R. 802 (Bankr.S.D.Ohio2007); *In re Tranmer,* 355 B.R. 234 (Bankr.D.Mont.2006); *In re Barr,* 341 B.R. 181 (Bankr.M.D.N.C.2006); *In re Rotunda,* 349 B.R. 324 (Bankr.N.D.N.Y.2006); *In re Guzman,* 345 B.R. 640 (Bankr.E.D.Wis.2006). Under this straight-forward approach, "one simply takes the calculation mandated by § 1325(b)(2) and does the math." *Alexander,* 344 B.R. at 749. Thus, under this interpretation, the income component of "projected disposable income" is a debtor's current monthly income figure as stated on line 20 of Form B22C. A review of Schedule I is not required. The *Alexander* court found that § 1325(b)(2) "plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law." Alexander, 344 B.R. at 747.

. . .

After a thorough analysis of the statute and case law analyzing the three approaches, this Court finds the strict, plain meaning approach adopted by *Alexander* to be the most persuasive on the question of how to calculate

> "projected disposable income" and, therefore, rejects the approaches suggested by the *Fuller* and *Jass* lines of cases.

Id. at 362-64. The court further made the following observations:

> This Court acknowledges that its adoption of the strict, mechanical approach may lead to impractical results when a debtor's "disposable income" calculated on Form B22C does not accurately reflect the debtor's actual income. However, the Court does not believe that such impractical results amount to being "absurd," and the Court "will not override the definition and process for calculating disposable income as being absurd simply because it leads to results that are not aligned with the old law." Alexander, 344 B.R. at 747.

Id. at 367.

This court agrees with those decisions that have held that the plain meaning of § 1325(b) requires a calculation for determining projected disposable income by utilization of Form 22C. On this basis, the court concludes that the computation for the above median income Debtors in this particular case results in a negative disposable income, and that they are, accordingly, not required to make a distribution to the general unsecured creditors.[3] The court further concludes that the trustee's objection to confirmation should be overruled to the extent that the trustee has objected to the Debtors' proposal to reduce the distribution to general unsecured creditors. Because the Debtors have agreed to extend the commitment period under the plan to 60 months, the court does not find it necessary to sustain the trustee's objection on that basis.

An order will be entered consistent with these findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58. This

---

[3] The trustee does not contest the Debtors' summation of the means test or Form 22C figures, or the Schedule I or J figures.

opinion shall constitute findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

**ATTORNEY FOR DEBTORS:**
Robert Gambrell
Gambrell & Stone, PLLC
P.O. Box 8299
Biloxi, MS  39535


**ATTORNEY FOR CHAPTER 13 TRUSTEE:**
Phillip Brent Dunnaway
10585 Three Rivers Road Ste. G
Gulfport, MS  39503